FILED

2004 FEB 23  P 12: 42

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PETER MASSARO

V.

ALLINGTOWN FIRE DISTRICT, et al.

CIVIL NO. 3:03CV136 (SRU)

February 18, 2004

## MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT

The plaintiff, through the undersigned counsel, hereby moves this Court to enforce a settlement agreement of the parties which was reached after extensive negotiations in two judicially supervised conferences. The plaintiff further requests a hearing on this motion at which defendants may appear and be heard. As is shown below, the parties reached agreement on a settlement of this action after protracted negotiations in successive settlement conferences supervised by the Honorable Magistrate Judge William I. Garfinkel. The terms of the agreement were specific and unambiguous. The negotiations closed with defense counsel's commitment to prepare the necessary closing papers and present them to the undersigned counsel. Defendants have failed and refused to perform their obligations on the agreement.

1

I.  **FACTUAL BACKGROUND**

This Title VII action was commenced on January 21, 2003. This Court thereafter referred the case to Magistrate Judge William I. Garfinkel for purposes of conducting a settlement conference. On August 12, 2003 the plaintiff and his undersigned counsel appeared at a scheduled settlement conference fully prepared to negotiate in good faith. In contravention of established rules and expectations respecting settlement conferences, defense counsel appeared at the conference unaccompanied by their client(s) or other representative vested with settlement authority.[1]

While settlement conferences often have little chance of success when attorneys appear without their clients or other authority figures, Magistrate Judge Garfinkel nonetheless proceeded with the conference and spent a good deal of time assessing the issues and evidence in the case. The undersigned counsel and her client likewise approached this conference in good faith although little was accomplished in the absence of the defendants or their authorized representatives. Accordingly, at the conclusion of the August 12, 2003 conference, the undersigned counsel took the position that another conference would likewise waste every one's time unless defense counsel appeared with a client or representative <u>with authority to settle the</u>

---

[1]  In attendance at the August 12, 2003 conference were Attorneys Paul Dorsey and Richard Arnold. They did not bring their clients or other representatives with authority to settle.

2

matter. Thus, it was agreed that a second conference would be held on September 11, 2003 and defense counsel would have in attendance at that time an individual with authority to settle the case.

On September 11, 2003, the undersigned and her client appeared again in the chambers of Magistrate Judge Garfinkel. Attorney Paul Dorsi appeared again, this time accompanied by Attorney Thomas Katon[2] and one Louis Esposito, who was and remains chairman of the three-member Allingtown Board of Fire Commissioners. Extensive and protracted negotiations ensued. At one point during the conference, the parties appeared close to reaching agreement and Mr. Esposito suggested that he speak privately with the plaintiff for the purpose of wrapping up details regarding the monetary terms and schedule of payments of an agreed-upon settlement sum. All counsel agreed with this suggestion.

Plaintiff's counsel did not wish to waste another day in the District Court negotiating with an individual who does not have authority to settle and bind the parties. Accordingly, the undersigned made direct inquiry of Mr. Esposito for the purpose of confirming his authority. Mr. Esposito in no uncertain terms indicated : 1 ) he was Chairman of the three-member Board; 2) the appearance of the other two members was <u>unnecessary</u>; and 3) he was vested with authority by the other commissioners to appear at the conference and negotiate a settlement. Based upon

---

[2]     Attorney Katon, a partner in the firm of Susman, Duffy & Segaloff, appeared in lieu of Attorney Robert Arnold, who it was advised, would no longer participate in the defense of the case.

3

this representation from Mr. Esposito, the undersigned allowed the conference to proceed.

The final phase of negotiations focused on the sole issue of the dates certain on which defendants would remit settlement checks. Those details were resolved by direct discussion between the plaintiff and Mr. Esposito.

The terms of the settlement agreement reached at the conference were clear and unequivocal. In consideration for the total settlement sum of Fifty Thousand Dollars ($50,000.00), the plaintiff agreed to dismiss the action with prejudice. Indeed, lengthy negotiations took place respecting the dates by which defendants would remit installment payments. At the conclusion of the discussions, the plaintiff agreed to Mr. Esposito's proposal that the settlement sum be paid in three installments on specified dates. Attorney Dorsi, at the request of the undersigned, agreed to forward the necessary written agreement to counsel and he stated he would do so within a week and one-half.

Based upon the above, Magistrate Judge William I. Garfinkel reported the case to this Court as settled. In accordance with the advisement of the Magistrate Judge, this Court issued a standard notice to the parties indicating the Court's understanding that the matter had been settled and setting a customary deadline for the submission of closing papers. While Mr. Esposito indicated that he and his two fellow commissioners would have to "vote" to effect the settlement, he stated that such would be a mechanical act and that it was a "done deal". This statement was consistent with Esposito's earlier statement that the presence at the conference of

4

the other two commissioners was unnecessary.

While it is by no means clear that an actual "vote" of all three commissioners including Mr. Esposito is necessary, since this involved a settlement of litigation by the Commission's Chairman who was not only vested with authority to settle but delegated by the other two to attend the conference for such purpose, it well appears that the instant dispute stems not from Mr. Exposito's lack of authority to bind the defendants but from a change of heart occasioned by the Commission's fear of some community opposition to the settlement. It is respectfully submitted, however, that defendants are not free to have a change of heart. Defendants appeared at the conference through their fully authorized delegate and chairman who professed authority to settle and proceeded throughout the conference consistent with such authority, causing no less than three attorneys and a Magistrate Judge to expend many hours of time.

**LEGAL ARGUMENT**

It is well-established that an oral agreement to settle is fully enforceable. "[A] settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if it is an oral agreement and even if a party <u>has a change of heart</u> between the time of the agreement to the terms of the settlement and the time that is reduced to writing." <u>New Horizon Financial Services, LLC v. First Financial Equities, Inc.</u>, 2003 U.S. District Lexis 14573 at * 15 (D. Conn. March 26, 2003) (emphasis supplied); <u>Pultney Arms, LLC v. Shaw Industries, Inc.</u>, 2002 U.S. District Lexis 17678 at * 2 (D. Conn. Sept. 6, 2002);

Johnson v. Schmitz, 237 F. Supp. 2d 183 (D. Conn. 2002). "Moreover, once a settlement is reached, the 'clear and unambiguous terms of the agreement' are not subject to repetition by the parties; rather the agreement will be summarily enforced by the Court". New Horizon Financial Services, LLC, at * 15; Autobond Parking Assocs. v. Barclay & Stubbs, Inc., 225 Conn. 804, 812, 626 A. 2d 729, 733 (1993) ("Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement in a meaningful way to resolve legal disputes.")

Not only did Mr. Esposito have apparent authority, he had actual authority. It is undisputed that the first conference was unsuccessful for the very reason that two defense attorneys showed up without a client or representative, and wasted time and money. The undersigned counsel expressly demanded the appearance of a defendant or an agent with authority to settle before she would agree to attend a second conference. In these days of pressing schedules and clogged dockets, it is essential that litigants and their attorneys take the rules of the District Court seriously, in particular, the rules regarding settlement conferences. All attorneys who practice before the bar of this Court understand this and further understand the necessity and requirement of appearing at a conference accompanied by one with authority so as to not waste the time of their opponents and, more importantly, the time of the Magistrate Judge whose pressing docket is known to all who appear before him.

Mr. Esposito's fellow commissioners decided not to attend the conference. That was their choice as long as Mr. Esposito had authority to negotiate and settle the case. He did have such authority, he professed such authority and, even if he misspoke or misled the undersigned and the Court, he had apparent authority to settle the case. Both his actual and/or apparent authority, and his representations, caused the undersigned counsel to devote nearly an entire day at a second conference in which she would not have participated had she known that defendants would later have a change of heart for political reasons and employ a pretext (e.g., a lack of agreement from the other two commissioners sufficient for a majority vote) to justify reneging on an agreement reached after time-consuming and extensive negotiations. As is evident by press reports (attached hereto) and the representations of Attorney Dorsi made to the undersigned, it appears that neither Mr. Esposito nor his fellow commissioners took any action whatsoever to consummate this settlement and have merely walked away from it for fear of criticism from certain members of the Allingtown community.

Indeed, defendants have very little credibility on this issue since the reported comments of defense counsel (see attached) are undoubtedly inconsistent with the events and agreements made at the conference. To even suggest, in a public fashion no less, that there were no "offers", and no proposals for settlement entertained, is a misuse of the Court's process and a betrayal of the time and energy invested by all.

7

If the settlement conference process in this District is to have any integrity and parties and their counsel are to take seriously their obligations in respect to this process, the actions of these defendants in failing to honor their agreement should not be tolerated.

*WHEREFORE*, the undersigned counsel respectfully requests that this motion be granted.

THE PLAINTIFF,
PETER MASSARO

BY: _____
KAREN LEE TORRE
Fed. Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, Connecticut 06510
Tel. (203) 865-5541
Fax: (203) 865-4844

His Attorney

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via first-class mail this 18th day of February, 2004, to:

Thomas E. Katon, Esq.
Susman, Duffy & Segaloff, P.C.
P.O. Box 1684
New Haven CT 06507


Paul J. Dorsi, Esq.
Donahue, Votto & DeGennaro, P.C.
415 Main Street
West Haven CT 06516

_____
Karen Lee Torre

NEW HAVEN REGISTER ■ www.nhregister.com ■ TUESDAY, OCTOBER 14, 2003

# Local B

INSIDE
City / …
Death Notices          B5
Nation, World          B6, 10
Weather                B10

## No settlement in Allingtown race bias case

By Mark Zaretsky
Register Staff

WEST HAVEN — The Allingtown Fire District is headed for federal court with Lt. Peter Massaro, who claims he was discriminated against in the 2001 search for a new chief because he's white.

But the two sides are involved in court-mandated settlement discussions first, officials said.

The district's lawyer briefed the Allingtown Board of Fire Commissioners on the status of the case in a recent meeting, amid rumors that the district was considering settling the case for $50,000.

No vote took place and the board's lawyer, Paul Dorsi, said reports that a settlement was imminent were incorrect.

The reports, brought several people to the board's meeting, including two former commissioners, a city councilwoman and West Haven Black Coalition President Carroll E. Brown.

Dorsi said the case is "at the initial stages of litigation" and "there is not presently an offer on the table."

Board Chairman Louis P. Esposito Jr. declined comment because of the pending litigation.

Massaro's lawyer, Karen Lee Torre, in a brief conversation, was surprised when told the board took no votes at the Oct. 6 meeting.

"My understanding was there should have been some sort of vote," she said. Torre was unavailable later for further comment.

Massaro, who originally filed a complaint with the state Commission on Human Rights and Opportunities, later chose to pursue it instead in federal court. He is one of several candidates passed over when the department decided in June 2001 to hire Elmer Henderson, a former New Haven fire board hired Henderson, all said they think it would set a poor precedent if the board were to settle the case with Peter Massaro.

Henderson is Allingtown's first African-American fire chief as well as the first black chief of any of West Haven's three independent fire departments.

Richard Massaro resigned under pressure in December 2000 after he allegedly was caught on tape uttering racial slurs about black Allingtown residents.

"I'm not my brother," Peter Massaro has said.

Brown and former commissioners Aaron Haley and Calvin DeLoatch, both of whom were on the board when Richard Massaro resigned and the board hired Henderson, all said they think it would set a poor precedent if the board were to settle the case with Peter Massaro.

"There is no discrimination here," said Brown. "It's an all-white department. So you didn't get a job and a black man got the job. He was more qualified.

"Why would they set precedent?" asked Brown.

"If (Peter Massaro) has a right to sue, Victor has a right to sue," she said, referring to Deputy Chief Victor Sampietro, who also applied. "The guy from the Center District has a right to sue," Brown said, referring to West Haven Fire Department Deputy Chief William Abbott.

"Don't set a precedent in West Haven by giving this family the money," she said. "It's politics as usual, and I'm saying the district should not have to pay them one cent."

Haley said he came to the meeting because he had heard that the board planned to settle for $50,000.

"I was concerned about it because I thought it would be unfair," said Haley. He said he would prefer to see the case go to court and a judge render a decision.

DeLoatch said he thought a settlement would be "an abuse of taxpayers' money."

City Councilwoman Martha Bell, D-5, who also attended, said, "I just want to know how much the taxpayers have to pay. We cannot afford to pay for any kind of litigation that shouldn't be."