UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                                    |   |                              |
|------------------------------------|---|------------------------------|
|                                    | : |                              |
| PETER MASSARO                      | : |                              |
|                                    | : |                              |
| V.                                 | : |                              |
|                                    |   | CIVIL NO.  3:03CV136 (EBB)   |
| ALLINGTOWN FIRE DISTRICT, et al.   |   |                              |

March 24, 2006

**PLAINTIFF'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**I.  BACKGROUND**

This action commenced on January 21, 2003.  Defendants filed an answer on July 8, 2003.

Initially assigned to the Hon. Stefan R. Underhill, this case was later transferred to the docket of this

court which issued an order back in November 21, 2005  setting this matter down for jury trial to

commence on February 15, 2005 with jury selection.  As the parties were in the midst of preparing

for filing their Joint Trial Memorandum, and as plaintiff and his counsel were preparing for jury

selection and trial, defendants threw a monkey wrench into the proceedings by filing a Motion to

Dismiss challenging the subject matter jurisdiction of this court, a motion which defendants could

have, but never did, file throughout the more than three years this case has been pending.  Defense

counsel gave no notice to the court or plaintiff's counsel of their to file such a motion although they

well it would serve to scuttle the trial proceedings.  They just filed the motion after causing the court

and counsel to expend time in connection with the preparation for jury selection and the Joint Trial Memorandum. All of plaintiff's counsel's time spent in preparation for jury selection and trial and that of her client was thus wasted. For the reasons set forth herein, defendants' motion is not only meritless but frivolous and ought properly to be subject to sanctions.

Apart from its lack of substantive merit, the timing of defendants' motion lends easily to the conclusion that it had a dilatory and obstructive purpose. Prior to defendants' filing of the motion to dismiss, the case was marked by other unseemly conduct by defendants, notably their breach of a settlement agreement reached after protracted negotiations overseen by the Hon. William I. Garfinkel, whose extensive time invested in the process was wasted by defendants' unconscionable decision to renege on the agreement after defendants' authorized representative at the settlement conferences shook hands with the Magistrate Judge and plaintiff's counsel, assuring that the agreement was a "done deal". As the record shows, plaintiff, who is being represented on an hourly rate basis by counsel, had no choice but to abandon a wholly meritorious motion to enforce the agreement as the cost of enforcement proceedings would consume the economic value of the settlement. (See Dkt. # 23.)

Since the action was commenced on January 21, 2003 one may fairly assume that if defense counsel had any confusion about the causes of action asserted (or the particular defendants against whom each cause was asserted) they had various options at hand early on: 1) a simple telephone call to plaintiffs' counsel which would have resulted in any clarification which defendants needed; 2) a

2

Rule 12 (e) Motion for a More Definite Statement (in the unlikely event that a simple conference with plaintiffs' counsel failed to address the questions); 3) a request for a status conference with the court to address any such concerns; 4) a more seasonably filed motion to dismiss at any point during the pendency of this action which did not serve to scuttle a scheduled trial and inconvenience the plaintiff, his counsel, witnesses, the court and court staff.

## II.    STANDARD OF REVIEW

For purposes of defendants' motion, the Court must not only accept plaintiff's allegations as true and may dismiss his complaint only if it is clear that no relief is available to him under any set of facts that could be proved consistent with the allegations of his complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering defendants' motion, the Court must not only accept as true all factual allegations but draw all inferences from the allegations in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims". Id. at 236.  Moreover, the Court is not to predict or assay the weight of the evidence which might be offered in support of the complaint. Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

## III.  ARGUMENT

### A.    THE MOTION TO DISMISS PLAINTIFF'S TITLE VII CLAIM IS BASED UPON INCOMPETENT EVIDENCE AND IS OTHERWISE MERITLESS FOR THE POSITION AT ISSUE IS NOT OF THE SORT WHICH CONGRESS INTENDED TO EXEMPT AND FURTHER, A RACE-NEUTRAL CONSIDERATION OF PLAINTIFF'S PROMOTION TO THE POSITION OF FIRE CHIEF BASED ON MERIT WAS A TERM, CONDITION AND PRIVILEGE OF HIS EXISTING EMPLOYMENT.

#### 1.    Defendants' Motion Is Based Upon Incompetent Evidence.

Defendants' submission of the Allingtown Fire District's Rules and Regulations do not suffice to require this court as a matter of law to declare that the position of Fire Chief is exempted from Title VII's protections.  As an initial matter, the document (appended as Defendants' Exhibit 2), despite its purported link to a letter of authentication from the Executive Secretary/Treasurer of the District (see February 3, 2006 letter from Deborah Brooks to Attorney Thomas Katon) does not appear to be complete in several respects. First, page 2 of the document contains but a single sentence positioned in the middle of the page, the text of which is but a repeat of the first clause of page 3 of the document.  Unless the District actually published a document of this importance in such sloppy and haphazard manner, a question arises as to the integrity of the exhibit.  Moreover, at least with respect to the copy on plaintiff's counsel, there are duplicate pages, pages out of order, and all pages beyond page 13 missing entirely.

4

**2.**    **Defendants Have Not Established As A Matter Of Fact And Law That The Court Lacks "Subject Matter Jurisdiction" Over The Title VII Claim.**

It should first be noted that defendants do not claim Massaro is not an "employee" within the meaning of Title VII. See 42 U.S.C. §2000e(f). Defendants instead assert that the position of Fire Chief which Massaro sought is exempted from the Act's reach and thus the court has no subject matter jurisdiction over the Title VII claim. See Defs.' Memo. of Law at pp. 8-11. Defendants cite no cases supporting the proposition that a municipal fire chief is unprotected from race discrimination under Title VII. Since there are some 167 cities and towns in the small state of Connecticut alone, each with a fire chief, one may fairly presume that there are some 50,000 or more fire chiefs in the United States. Defendants would have this court declare, in interpreting the applicable provision of Title VII, that Congress intended to permit municipalities across the nation to publish an ad seeking candidates for the job of fire chief which announces that no Blacks or woman need apply. Defendants cite a variety of cases which explicate the criteria for exemption under Title VII but none of those cases are applicable to the facts and allegations in the instant case.

In 1972, Congress amended Title VII to include state and local governments and accordingly changed the definition of "employee" to exclude high-level government employees. An "employee" under Title VII is thus defined:

> The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal

5

staff, or an appointee on the policy-making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C. §2000e (f).[1]

As the courts have recognized, it was Congress' intent that the exemption be <u>narrowly construed</u> and was "intended to cover only those appointees who 'are chosen by the Governor or the Mayor or the County Supervisor, whatever the elected official is, and who are in a close personal relationship and an immediate relationship with <u>him</u> [as] first-line advisors.'" <u>Anderson v. City of Albuquerque</u>, 690 F.2d 796, 801 (10th Cir. 1982) quoting 118 CONG. Rec. 4492-93 (1972). Indeed, the House and Senate Conference Report revealed the aim of the exclusion, which was to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to <u>policy-making at the highest of levels of the departments or agencies of state or local governments, such as cabinet officers</u> ...". H.R.REP NO. 92-238, Joint Explanatory Statement of Managers as the Conference on H.R. 1746 (1972), <i>reprinted</i> in 1972 U.S.C.C.A.N. 2180 (emphasis added). The Conference Report further repeated and emphasized that the exemption should be construed <u>narrowly</u>. <u>Id</u>. (Emphasis supplied.)[2]

---

[1]An identical definition is used in the Age Discrimination in Employment Act (ADEA). <u>See</u> 29 U.S.C. §630 (f).

[2]For this and other reasons, including that defendant never filed a motion for summary judgment, resolution of this issue by way of a Rule 12 (b) (6) motion is inappropriate. <u>See</u> <u>Leving v. City of Chicago</u>, 1988 U.S. District LEXIS 1817, *5 (whether plaintiff was a member of an elected official's

The Connecticut General Assembly, by legislative act, altered any at-will employment status of fire chiefs which may have existed by virtue of their appointive status and exclusion from collective bargaining units whose members enjoy, among other things per force of union contracts, protection from the whims of employers by virtue of an at-will employment status. In distinction to the those high-level, policy-making and confidential appointees whom Congress intended to exempt from the definition of "employee" under Title VII, fire chiefs in the State of Connecticut do not serve at the pleasure of the hiring authority even if the authority is an elected mayor or other official. Connecticut General Statutes § 7-302 provides, in pertinent part:

> No active head of any fire department of any town, city or borough shall be dismissed unless he has been given notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a public hearing before the authority having the power of dismissal. Such public hearing, unless otherwise specified by charter, shall be held not less than five nor more than ten days after such notice. Any person so dismissed may appeal within thirty days following such dismissal to the Superior Court for the judicial district in which such town, city or borough is located. Service shall be made as in civil process. Said court shall review the record of such hearing, and, if it appears upon the hearing upon the appeal that testimony is necessary for an equitable disposition of the appeal, it may take evidence or appoint a referee or a committee to take such evidence as it directs and report the same to the court with his or its findings of fact, which report shall constitute a part of the proceedings upon which the determination of the court shall be made. The court, upon such appeal, and after a hearing thereon, may affirm the actions of such authority, or may set the same aside if it finds that any such authority acted illegally or arbitrarily, or in the abuse of its discretion, or with bad faith or malice.

---

"personal staff" involved a factual determination resolution of which can not be made by a Rule 12 (b) (6) motion) citing Miller v. Advanced Studies, Inc., 635 F. Supp. 1196, 1999-20 (N.D. Ill. 1986). (The issue of whether one is an "employee" under Title VII is fact-bound and cannot be determined on the face of the complaint.)

The procedural and substantive rights and privileges thus accorded to fire chiefs in the State of Connecticut first and foremost serve to distinguish fire chiefs from the occupants of those high-level, policy-making positions whom Congress, in fashioning the exemption, sought to exclude from the ambit of Title VII's protectees.  Fire Chiefs do not serve at the whim and pleasure of the appointing authority.  They cannot be terminated at will and for any reason.  The appointing official(s) (be they mayors, selectmen or board commissioners) may not abuse their discretion or act arbitrarily.  They are, by legislative command, to act with good faith and without malice.  Discriminating against a fire chief because of his/her race, gender or religion would without question be viewed by the state's superior courts as an act of "bad faith" and most certainly as "arbitrary".  Thus, this grant of protected status to fire chiefs renders the position under the laws of this state as one which is not subject to plenary power of dismissal by the appointing authority, a core characteristic of those positions which Congress intended to exempt.  See Teneyuca v. Bexar County, 767 F.2d 148, 151 (5th Cir. 1985) (whether the elected official has plenary power of removal is a factor in deciding whether a job falls within the "personal staff" exemption); Ramirez v. San Mateo County, 639 F.2d 509, 513 (9th Cir. 1981); Curl v. Reavis, 740 F.2d 1323, 1328 (4th Cir. 1984); Calderon v. Martin County, 639 F.2d 271, 273 (5th Cir. 1981).  See also Montgomery v. Brookshire, 34 F.3d 291, 295-296 (5th Cir. 1994) (noting that plenary powers of appointment and removal, that is, whether one can be terminated at will, is a factor).

Moreover, in support of their claim that they are entitled to dismissal on the basis that

8

Massaro would have been an appointee on the policy-making level, defendants rely entirely on the district's rules and regulations which are, as before stated, incompetently submitted in incomplete, questionable form. Defendants' claim that the Allingtown Fire Chief "clearly sets policy," see Defs'. Memo. of Law at p. 11, is a heightened description of the Chief's policy-making authority and is based on the language in Article II, Sec. 2 of the Rules which states that the Chief shall, with the approval of the Board of Fire Commissioners, "make rules and regulations in conformity with the Ordinances of the City concerning operation of the department ..." This language hardly qualifies to transform the Allingtown Fire Chief into the type of high-level policy-making appointed official envisioned by Congress as warranting exclusion from protection against race and other discrimination.[3]

3. **Under Title VII, The District Could Not Discriminate Against Plaintiff On The Basis of Race In Considering Him For Promotion To Fire Chief.**

Defendants' challenge to the court's subject matter jurisdiction over the Title VII claim is otherwise without merit because, in the instant case, Massaro was already an existing employee, holding the rank of Lieutenant. Defendants do not, and could not, claim that the position of Lieutenant is exempted from Title VII's definition of employee. Defendants instead base their motion on the argument that the position Massaro sought to be promoted to – Fire Chief – is itself

---

[3]Moreover, in none of the cases cited by defendants have courts considered a situation where an employee is appointed not by a single official but by multiple officials – in this case, by a Board of Commissioners which notably, as in this case, can be fractured and, in choosing a Fire Chief, can do so against the bitter dissent of one of its members.

9

an exempt position and thus even a discriminatory denial of that position to Massaro is not actionable under Title VII.  This argument, however, was dispensed with long ago by the 1984 decision of the United States Supreme Court in Hishon v. King & Spalding, 467 U.S. 69, 104 S.Ct. 2229 (1984).  In Hishon, the question before the Supreme Court was whether a woman lawyer could sustain a Title VII claim based on a discriminatory denial of partnership in a law firm.  The District Court below had dismissed her claim for lack of subject matter jurisdiction, accepting defendant's argument that the position of partner was not within the reach of the Act.  The Supreme Court made a distinction between a situation where an employer refuses to hire someone in the first instance and a situation where an existing employee is discriminated against in respect to terms, conditions and privileges of employment on the basis of a prohibited factor with respect to advancement in the organization.  Id at 73-74, n. 5.  In addition to prohibiting discrimination in hiring, the court noted that Title VII also states it is an unlawful employment practice for an employer "otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race ...".  Id. at p. 74, quoting 42 U.S.C. §2000e-2(a). Accepting as true Hishon's assertion that the law firm, by promise and custom, was to consider an associate's candidacy for partner on the basis of merit, the firm's denial of partnership on the basis of sex would constitute unlawful discrimination in the "terms, conditions or privileges of employment" notwithstanding the fact that admission to partnership by itself was not covered by Title VII.  Id. at pp. 74-75.  For the same reason, even if this court were to accept the argument that

10

the position of Fire Chief is exempted from the Act, Massaro still has a viable Title VII claim since,

as an existing Lieutenant in the department, he had a right to be considered for advancement to the

position of Fire Chief free from consideration of his race.  Defendants' own Exhibit 2 bears this out.

Without regard to text which may have been redacted or is otherwise missing from the exhibit, the

Allingtown Fire Districts Rules and Regulations as submitted contains the following text in the

"Foreword" to the document:

> These Rules and Regulations are not intended to cover every case that may
> arise in the discharge of their duties.  Something must necessarily be left to
> the intelligence and discretion of individuals and <u>according to the degree in
> which they show themselves possessed of these qualities, and to their zeal,
> activity and judgment on all occasions will be their claim for future
> promotion.</u>

Defendant's Exh. 2 at p. 3. (Emphasis supplied).

Moreover, Article 2, §2 of the Rules states as follows:

> <u>All appointments to the department</u> and all promotions in the classified
> service shall be made <u>according to merit and fitness ...</u>

Defendant's Exh. 2 at p. 5.  The quoted text clearly evinced an intent not to make a distinction

between those in the classified service and those who are appointees.  The two cited provisions,

individually and read together, both constitute a promise by the District that promotions shall be

made on the basis of merit and fitness (including those qualities which obviously have nothing to

do with race identified in the Foreword which the District claims will be the basis of one's claim for

future promotion.)  Having made these commitments, the District thus established them as a term,

11

condition or privilege of employment which cannot be denied on the basis of race. Hishon, 46 U.S. 69 at 75-76. See also Bishopp v. District of Columbia, 788 F.2d 781, 789 n. 11 (D.C. Cir. 1986) (observing that any suggestion by a fire district that the position of Fire Chief was excluded from Title VII coverage is no longer viable in light of Hishon as "Title VII applies to selection for non-employee positions if consideration for that position can be regarded as one of the 'terms, conditions or privileges of employment' of a covered job"). For this additional reason, defendants' motion is without merit.

> **B.  DEFENDANTS' CLAIM THAT THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CAUSE   FOR VIOLATION OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION OF THE LAWS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS PATENTLY FRIVOLOUS FOR THE COMPLAINT CLEARLY ALLEGES THAT DEFENDANTS, IN  SELECTING A NEW FIRE CHIEF, UNLAWFULLY CLASSIFIED CANDIDATES AND MADE A SELECTION ON THE BASIS OF RACE.**

It is beyond cavil that governmental race-based classifications, even those in the form of remedies imposed by judicial decree, must survive strict scrutiny. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097 (1995). Strict scrutiny must be applied to all claims of race-based discrimination by government actors, regardless of the race of the victims or the beneficiaries of it. City of Richmond v. J. A. Croson, Co., 488 U.S. 469, 109 S.Ct. 722, 733-36 (1989). As the Supreme Court reaffirmed in Adarand Constructors, Inc., "any person, of whatever race, has the right to demand that any governmental actors  subject to the Constitution justify any racial classifications

12

subjecting that person to unequal treatment under the strictest judicial scrutiny". Id. 515 U.S. at 224. It is inconsistent with the Fourteenth Amendment's guarantee of equal protection to permit race-conscious selections absent a compelling governmental interest, specific identification of discrimination sought to be remedied, strong evidentiary support for the necessity of remedial action and a showing that the relief does not unnecessarily trammel the rights of non-minorities. Croson, 109 S.Ct. at 721-28; Wygant v. Jackson Bd. Of Educ., 476 U.S. 267, 106 S.Ct. 1842, 1849 (1986). In addition, the remedy must be linked to, and narrowly tailored to address, the effects of that employer's own past discriminatory practices. In re: Birmingham Reverse Discrimination Employment Litigation, 20 F.3d 1525, 1540 (11th Cir. 1994) citing Wygant, supra, 106 S.Ct. at 1849 n. 5.

In distinction to Title VII standards as set forth in Griggs v. Duke Power, Co., 401 U.S. 424 (1971), plaintiffs cannot base an equal protection claim on unintended disparate impact but must show the state actors' intent to discriminate. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040 (1976). Intentional discrimination, however, can be demonstrated in more than one way. A facially neutral statute or policy violates the equal protection clause "if it was motivated by discriminatory animus and its application results in discriminatory effect." Hayden v. Nassau 180 F.3d 42, 48 (2d Cir. 1999) citing Arlington Heights v. Metro. Hous.Dev. Corp., 429 U.S. 254, 264-65, 97 S.Ct. 555 (1997). Another involves a facially neutral law which is nevertheless unconstitutional "if it is applied in a discriminatory fashion." Id. citing Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct.

1064 (1886).  Lastly, a statute or practice is facially unconstitutional if by its terms it classifies

persons on the basis of race or gender.  Id. citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200,

213 (1995).

      In the instant case, Massaro's allegations satisfy both the first and second of the above

examples.  Massaro alleges that he is caucasian, a 23-year veteran of the Allingtown Fire District,

was well-qualified for promotion to the position of Fire Chief and applied for the open position on

or about April 10, 2001. See Complaint at ¶¶ 7-9.  He further alleges that the defendants DeLoatch

and Haley, two of three members of the Allingtown Board of Fire Commissioners, and both African-

American, were determined to exclude Whites and were bent on hiring an African-American.  In

furtherance of this aim, the said defendants are alleged to have manipulated the hiring criteria so as

to allow for the eligibility and ultimate appointment of an African-American applicant who was an

outside candidate, did not possess the established and published qualifications for the job and who

was no longer employed with the New Haven Fire Department due to a claimed disability.  Id. ¶¶

11-15.  The Board had published a classified advertisement for the vacancy in area newspapers

which advised that, among other requirements, qualifying candidates for the position of Fire Chief

must possess a Bachelor's Degree.  The plaintiff met all of the criteria for selection, including the

degree requirement.  He alleges that the said defendants, upon receiving an application and resume

from African-American candidate Elmer Henderson (whose candidacy was the subject of lobbying

by leaders of New Haven's and West Haven's African-American communities), noted that

Henderson did not possess the required degree and thus set about contacting newspaper representatives for the purpose of altering the published job qualifications in order to hire Henderson. Id. ¶¶ 13-16.  Defendants allegedly accomplished this act surreptitiously without the consent and knowledge of the third member of the Board and, upon the third member's strong protest of a race-based selection, orchestrated the appointment of Henderson to the position while excluding the third member from the selection process.  Id. ¶¶15-17.  Plaintiff alleges that the defendants excluded him from consideration and promotion  on the impermissible basis of race in violation of his right to equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution.  Id. ¶20.[4]

The case law on this issue is unequivocal and plaintiff's complaint clearly states a cause of action for violation of his fourteenth amendment rights.   "At the heart of the Constitution's guarantee of equal protection lies the simple command that the government must treat citizens as individuals, not as simply components of racial, religious, sexual or national class".  Berkley v. United States, 287 F.3d 1076, 1084 (Fed. Cir. 2002) quoting Metro Broad., Inc. v. F.C.C., 497 U.S. 547, 602 (1990)(O'Connor, J., dissenting)(Secretary of the Air Force violated the equal protection clause of the fourteenth amendment by ordering special consideration be given to minorities and woman in selecting officers for involuntary termination).   In Berkley, the United States Court of Appeals held the mere fact that the government permitted minority and female officers to be

---

[4]In the introduction to the Complaint, plaintiff states that the action is brought under 42 U.S.C. ¶ 1983. See Complaint, ¶ 1.

"evaluated under a different standard than white male officers" was sufficient to trigger strict scrutiny under the equal protection clause.  Id. at 108; see also Associated General Contractors of Connecticut v. City of New Haven, 791 F.Supp. 941 (D.Conn. 1992).  (City of New Haven's ordinance setting aside a percentage of city contracts for women and minorities declared unconstitutional as violative of the  Equal Protection Clause); U.S. v. Board of Education of the Township of Piscataway, 91 F.3d 1547, 1558 (3d Cir. 1996)(en banc) cert. dismissed 118 S. Ct. 595 (1997)("[t]here is no congressional recognition of diversity as a Title VII objective requiring an accomodation" and employer's gender-based preferences, for the sake of gender diversity, violated both Title VII and the fourteenth amendment.); Biondo v. City of Chicago, 382 F. 3d 680, 684 (7th Cir.  2004)(invalidating, as violative of Title VII and the fourteenth amendment, the city's manipulation of scoring results and rank order of candidates to benefit African-American candidates); Dallas Fire Fighters Assoc. v. City of Dallas, 150 F.3d 438, 441 (5th Cir. 1998), rehearing denied 159 F. 3d 1358, cert. den. 526  U.S. 1038, 1046 (1999)(race-based preferences in promotion violated the equal protection clause).

Defendants could not, consistent with the fourteenth amendment, exclude plaintiff from consideration and promotion on account of his race.  Notice pleading is all that is required of the plaintiff's complaint and it adequately, indeed in detailed fashion, sets forth facts which, if true, establish that the defendants DeLoatch and Haley, impermissibly classified candidates on the basis of race and intentionally and by design sought to select the successful candidate on that basis, going

16

so far as to manipulate the eligibility criteria to enable themselves to do so. Defendants' challenge to this cause of action is set forth in one long meaningless paragraph on page 17 of their brief in which they do no more than recite boilerplate statements of law respecting the equal protection clause, make the irrelevant claim that "Plaintiff has [not] alleged a municipal policy"[5] and make the absurd claim that plaintiff "has not pursued any of the above theories in his Complaint".

If anything, Defendants' Exhibit 2 attached to their motion (upon which they base the equally meritless claim that plaintiff is exempted from Title VII) shows clearly that plaintiff's equal protection claim is firmly grounded as the Foreword to the Rules and Regulations expressly states that "[a]ll appointments *to the Department* and all promotions in the classified service shall be made according to merit and fitness . . ." Defs.' Exh. 2 at p. 5. (emphasis supplied). Thus, contrary to defendants' claim (see Defs.' Memo. at p. 17) that plaintiff does not pursue any of the "theories" of equal protection violations, the Complaint clearly alleges facts which show that this facially race-neutral selection policy of the District was applied by defendants in a discriminatory manner and further alleges facts which, if proved, unquestionably establish defendants' unlawful state of mind and intent.

Defendants' motion wholly ignores the numerous factual allegations of the complaint, which no doubt explains why their argument for dismissal of the equal protection claim is terse and wanting. Defendants' motion is patently and inexcusably frivolous and is more consistent with a

---

[5]Defendants neither explain nor provide authority for the proposition that plaintiff, to sustain a Fourteenth Amendment claim, must plead a "municipal policy".

desire for delay and to vex the plaintiff than an honest belief that the court lacks subject matter jurisdiction.

## C.    DEFENDANTS' VARIOUS OTHER CLAIMS WERE ALL UNNECESSARY OR ARE OTHERWISE MOOT.

Other of defendant's claims are completely unnecessary and appear to be manufactured for the purpose of creating a superficial appearance of legitimacy to the motion.  The Complaint satisfies federal notice pleading requirements.  Accordingly, it is not set forth in separate counts.  While defendants opine that the Complaint "is not a model of clarity ...", see Defs'. Memo. of Law at p. 5, n.1, it should be noted that defendants answered the complaint back in June of 2003, never sought such clarification, never filed a motion for summary judgment or otherwise conferred with plaintiff's counsel regarding any confusion on defendant's part as to the claims and the individual or entity against which they are asserted.  Plaintiff is well aware that there is no individual liability under Title VII and that the cause of action must be against the employer.  See Defs'. Memo. at p. 5 citing Tomka v. Siler Corp., 66 F.3d 1295 (2nd Cir. 1995) (subsequent history omitted).  While the Complaint does not make it crystal clear that the only defendant against whom the Title VII claim is asserted, the plaintiff did, for purposes of establishing the cause of action, plead that the Allingtown Fire District was the relevant employer under the Act.  See Complaint at ¶ 3.  The Title VII cause in indeed asserted only against the employer entity and defense counsel probably knew that but would otherwise had any conclusion quickly clarified had they not sat on their hands since

18

January, 2003.[6]  For like reasons, the motion for dismissal as it relates to the individual defendants,

see Defs.' Memo. at pp. 13-14 (respecting claims against the individuals in their individual capacity)

is likewise unnecessary as is the motion to dismiss claims against them in their official capacities

because no such capacity claim is asserted.  Finally, the motion to dismiss the due process claim is

moot as plaintiff did not intend to pursue that claim at trial.  Defense counsel would have realized

that fact had they not thrown a monkey wrench into the filing of the Joint Trial Memorandum and

diverted the attention and time of plaintiff's counsel to reacting to and opposing a frivolous motion

to ismiss.[7]

Defendants' motion was filed under date of February 6, 2006, as counsel were in the midst

of preparing the Joint Trial Memorandum shortly before the scheduled jury selection.  Defendants'

Motion to Dismiss was accompanied by a 22-page memorandum of law containing numerous

citations to authority.  And while the authority does not support a grant of the motion, there is no

question that defense counsel did not put these moving papers and brief together overnight but had

to have taken considerable time to research and draft the motion and memorandum of law.  In

addition, defense counsel attached two exhibits, one of which (the District's Rules and Regulations)

---

[6]For the same reason, defendants' arguments set forth at pp. 6-8 of their Memorandum of Law are also unnecessary and meritless.  Defendants incorrectly state that "plaintiff also charges ... Haley and DeLoatch with Title VII violations in their official capacties."  This is not the case and accordingly there is no issue.

[7]For the foregoing reasons, defendants' argument with respect to pendant state claims, see Def's Memo. at p. 21, need not be addressed.

had to be authenticated.  A review defendants' exhibit two shows that defense counsel secured a purported statement of authentication on February 3, 2006.  Thus, these moving papers were in the preparation pipeline for quite some time prior to the February 6, 2006 filing period.  At no time did defense counsel alert either plaintiff counsel's or the court that they were in the midst of preparing an extensive submission challenging the court's subject matter jurisdiction, moving papers which they knew would operate to scuttle, at the eleventh hour, a scheduled jury trial.  It well appears that, apart from defendants' utterly meritless claims respecting the Title VII and equal protection claims, defense counsel deliberately interpreted the text of the Complaint in as broad a purpose as possible in order to purport to be dismissing claims which in fact do not exist, or which defense counsel were not in issue had they not conducted themselves as aforedescribed.

For the foregoing reasons, the motion should be denied.  In addition, defense counsel ought to be made to reimburse for the unnecessary expense and fees he has incurred as requested in the accompanying motion made pursuant to 28 U.S.C. §1927.


THE PLAINTIFF,
PETER MASSARO


BY:_____
    KAREN LEE TORRE

20

Fed. Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, Connecticut 06510
Tel. (203) 865-5541
Fax: (203) 865-4844

His Attorney

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was sent via first-class mail this 13th day of March, 2006, to:

Thomas E. Katon, Esq.
Susman, Duffy & Segaloff, P.C.
P.O. Box 1684
New Haven CT 06507


Paul J. Dorsi, Esq.
Donahue, Votto & DeGennaro, P.C.
415 Main Street
West Haven CT 06516


_____
Karen Lee Torre

21