UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*****************************************
PETER MASSARO                    *   CIVIL ACTION NO.
               PLAINTIFF         *   3:03CV00136 (EBB)
                                 *
VS.                              *
                                 *
ALLINGTOWN FIRE DISTRICT, ET AL  *   APRIL 17, 2006
                                 *
               DEFENDANTS        *
*****************************************
```

## DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTION TO MOTION TO DISMISS

As a preliminary matter, Plaintiff's many concessions require a clarification of which claims (of the many) are being pursued and against whom. Acknowledging that the complaint is not "crystal clear," Plaintiff concedes his Title VII action is brought only against the Fire District. See Obj. at 18-19 & n.6. He concedes all 1983 claims against Haley and DeLoatch and abandons his due process claim. See Obj. at 19. He also abandons his 1981 and statutory and constitutional state law claims by failing to address them. See, e.g., Douglas v. Victor Capital Group, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998)(collecting cases). In sum, all that remains is a Title VII claim against the Fire District and an equal protection claim against the Fire District and the Board of Fire Commissioners. Thus, what is at issue here is Defendants' 12(b)(1) motion to dismiss the Plaintiff's Title VII claims and Defendants' 12(b)(6) motion addressed to Plaintiff's equal protection claim.

### I. THE CHALLENGED COPY OF THE DISTRICT RULES IS AUTHENTIC AND ADMISSIBLE EVIDENCE.

With no counter-evidence, Plaintiff asserts that the copy of the District Rules appended to the Defendants' motion as Exhibit 2 is incompetent and unreliable. Given its contents and substance, the circumstances here and the certifying letter from the public office where the document is kept, there are sufficient grounds to find the document authentic and admissible. See Fed.R.Evid. 901(a); 901(b)(4); 901(b)(7). Despite an inconsequential copying error in which pages 12 and 13 were transposed and an extra copy of page 7 was included, the thirteen-page document meets the criteria for self-authentication

and authentication of an official record. The Executive Secretary and Treasurer of the Fire District declared it a certified copy. See Fed.R.Evid. 901(b)(7); 902(4); Fed.R.Civ.P. 44(a); Defs' Mot. To Dismiss at Exh. 2. It is also an official publication issued by the Fire District to department members. See Fed.R.Evid. 902 (5); Fed.R.Civ.P. 44(a). Further, the document is relevant to the powers of the Fire Chief position. Fed.R.Evid. 401. Even the Plaintiff relies on it. See Obj. at 11-12. However, to alleviate any further concerns, a new certified copy of the District Rules with another certifying letter is attached hereto as Exhibit 1. Should the Court be inclined to rule it inadmissible, however, the Defendants request an evidentiary hearing under Fed.R.Evid. 104(a).

## II. PLAINTIFF'S TITLE VII ARGUMENTS ARE UNAVAILING.

As an initial matter, it is noteworthy that the Plaintiff completely ignores the standard of review for subject matter jurisdiction and cites only the 12(b)(6) standard. See Obj. at 3, 5. However, as the Defendants have challenged Plaintiff's Title VII claims under 12(b)(1), the Plaintiff bears the burden to prove subject matter jurisdiction by a preponderance of the evidence. See Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir.), cert. denied, 125 S.Ct. 1824, 161 L.Ed.2d 723 (2005). Moreover, the Court cannot draw argumentative inferences in the Plaintiff's favor concerning issues of subject matter jurisdiction. See Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern, Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

With regard to whether or not a 12(b)(1) motion is appropriate (as opposed to a 12(b)(6) motion), the Defendants draw the Court's attention to Arbaugh v. Y & H Corp., __ U.S. __, 126 S.Ct. 1235, __ L.Ed.2d __ (2006), a case decided after the submission of Defendants' motion to dismiss. While Arbaugh does not address the policymaker exception contained within Title VII's "employee" definition, the Defendants point it out to the extent that the Court deems it relevant. In Arbaugh, the Supreme Court held that Title VII's numerosity requirement to be an "employer" does not impact subject matter jurisdiction but is an element of the claim. See id. at 1239, 1245. Thus, the Court found that the defense claim that the numerosity requirement was not met was appropriately considered under 12(b)(6) rather

than 12(b)(1). See id. The Court based this holding on the rationale that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 1245.

In contrast to Arbaugh, what is at issue here is the policymaker exception contained within the Title VII definition of "employee". Thus, Arbaugh is not controlling. Moreover, notwithstanding Arbaugh, existing case law supports the argument that the policymaker exception raises an issue of subject matter jurisdiction, as intended by Congress and required by our governmental system, and that this exception is different in kind from the numerosity requirement. See Gregory v. Ashcroft, 501 U.S. 452, 464-70, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (under identical ADEA exception, court affirmed dismissal due to federalism principles that preclude Congress' legislative authority from invading State's powers to establish federal jurisdiction over high-level policymaking positions); Stillians v. Iowa, 843 F.2d 276, 278-79 (8th Cir. 1988), abrogated on other grounds, Astoria Fed. Sav. And Loan Ass'n v. Solimino, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (under identical ADEA exception, court affirmed dismissal of failure to promote claim expressly for lack of subject matter jurisdiction due to Congressional policy); EEOC Dec.P. 6739, Dec. No. 79-8, 1978 WL 5829, *2-3 (1978)(copy attached) (dismissing charge for lack of subject matter jurisdiction under policymaker exception as legislative history showed Congress realized necessity of allowing elected officials complete freedom in appointments).[1]

---

[1] At the very least, the policymaker exception constitutes a jurisdictional threshold and an element of the claim, so that it would be appropriate here to convert the motion into one for summary judgment should this Court find that the policy maker exception does not implicate the Court's subject matter jurisdiction. See Wheeler v. Hurdman, 825 F.2d 257, 259-60, 277 (10th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) (motion properly converted as issue of whether partner was "employee" under Title VII, ADEA and Equal Pay Act intertwined jurisdiction with element of claim; court held partner not "employee"). Should this Court so conclude, Defendants request it review affected claims under 12(b)(6) or treat the motion as one for summary judgment and allow the parties a reasonable time to submit any additional pertinent documents and affidavits. See Fed.R.Civ.P. 12(b); 12(c); 12(h)(2); 56.

3

A.  **The Determination Of Whether The Policymaker Exception Applies Rests On The Qualities Of The Position Sought And Not Plaintiff's Current Employment Status.**

Contrary to the Plaintiff's contention, the issue of whether or not the policymaker exception applies in cases concerning an appointment or promotion rests not on the Plaintiff's current employment, but on the qualities of the position he sought. See Deneen v. City of Markham, 1993 WL 181885, *3-4 (N.D.Ill. 1993)(copy attached)(in reverse discrimination case, policymaker exception applied to fire chief position sought by plaintiff already employed by fire department); Stillians, supra, 843 F.2d at 278-79 (identical ADEA policymaker exception exempted position sought and required dismissal for lack of subject matter jurisdiction); Beckmann v. Darden, 351 F.Supp.2d 139, 144-45 (S.D.N.Y. 2004)(policymaker exception exempted plaintiff from Title VII protection where mayor refused to reappoint him to position sought); Carlton v. City Of Topeka, Kansas, 1993 WL 32780, *2-3 (D.Kan. 1993)(copy attached)(position sought exempt from Title VII under policymaker exception where city council refused to confirm appointment).

Further, when examining the position sought, the actual performance of duties is not determinative and, therefore, the extensive fact-bound inquiry Plaintiff seeks is not required.[2] See Butler v. New York State Dept. Of Law, 211 F.3d 739, 748-49 (2d Cir. 2000) (court must "look at the attributes of the position, not the actual performance of the job," which is irrelevant); accord Equal Employment Opportunity Commission v. Commonwealth Of Massachusetts, 858 F.2d 52, 56 (1st Cir. 1988) (even if final decision left to appointer, actual close working relationship between policymaker and appointer not vital as flexible standard requires court only look at position of appointees within government structure

---

[2]For this proposition, the Plaintiff cites Miller v. Advanced Studies, 635 F.Supp. 1196 (N.D.Ill. 1986). See Obj. at 6-7 n.2. Miller, however, turned on the inapposite distinction between an employee and an independent contractor and held that whether one is an "employee" cannot be determined "from the face of the complaint, *unless the complaint happens to allege facts which clearly preclude the possibility that the plaintiff is an 'employee.'*" (Emphasis added.) Id. at 1200. Plaintiff alleges here that he sought appointment to the fire chief position. See Complaint, ¶ 7. Given the known and defined powers of that position, this allegation alone shows the policymaker exception applies.

4

and not so much at particular duties of persons involved). Indeed, drawing on Second Circuit law, the Eighth Circuit promulgated three commonly cited factors in analyzing whether the policymaker exception applies: "1) whether the [position] has discretionary, rather than solely administrative powers . . . 2) whether the [position] serves at the pleasure of the appointing authority . . . and 3) whether the [position] formulates policy." (Citations omitted.) Stillians, supra, 843 F.2d at 278-79. Following Stillians, in Costenbader-Jacobson v. Pennsylvania, 227 F.Supp.2d 304, 309-311 (M.D.Pa. 2002), a District Court found that the policymaker exception applied where the position sought had genuine discretionary and policymaking powers regardless of whether or not these powers were exercised. Moreover, on facts strongly resembling ours, the position of fire chief has been held exempt from Title VII. See Deneen v. City of Markham, supra, 1993 WL 181885 at *3-4 (in reverse discrimination case, policymaker exception applied to fire chief position sought by plaintiff as ordinance and job description showed position's considerable power over department). Thus, the District Rules make clear that the Fire Chief position encompasses significant and genuine discretionary and policymaking powers such that the policymaker exception applies.[3]

The authority cited by the Plaintiff concerns the separate "personal staff" exception which is distinct from the policymaker exception. Anderson v. City of Albuquerque, 690 F.2d 796, 800 (10th Cir. 1982) (employee exemption entails four distinct exceptions: elected officials; personal staff; immediate

---

[3] In addition to those portions of the District Rules cited previously; see Def's Motion To Dismiss at 10-11; the District Rules show the Fire Chief position entails extensive discretionary and policymaking powers. See District Rules, Art 2, § 2 (chief in direct command of department; assigns all members to posts, shifts, details and duties; makes rules and regulations, with Board's approval, for operation of department and conduct of officers and employees; responsible for efficiency, discipline and good conduct of department and care and custody of its property; disobedience to chief's lawful orders are grounds for disciplinary action with notice and opportunity for board hearing); Art 2, Apparatus, § 1 (only chief can consent to removal of apparatus from station except in emergencies; chief has discretion to permit use of apparatus outside district in serious emergencies); Art 2, Conduct And Discipline, §§ 3-4, 12 (chief may subject members to disciplinary action including suspension with later report to board); Art.2, Desk Watch § 1 (desk watch and regulations thereto established and maintained at chief's discretion); Art 2, Duties, § 2 (chief controls deputy chiefs and may designate their duties); Art 3 § 1 (chief directs superintendent of motor apparatus and approves all requisitions); Art 4 (chief supervises fire prevention bureau, selects inspectors in his discretion and may delegate in his discretion certain of his duties to fire marshal and inspectors).

5

advisers; appointed policymakers). Unlike the policymaker exception, the application of the personal staff exception requires a review of the complex facts surrounding how closely an elected official actually works with a staff member. See Teneyuca v. Bexar County, 767 F.2d 148, 151 (5th Cir. 1985). Thus, Teneyuca, Ramirez, Curl, Leving and Montgomery, cited by the Plaintiff, see Obj. at 6 n.2 & 8, are inapposite as they turn on use of the personal staff exception. Further, Plaintiff's concern that an elected board rather than one elected official appoints the fire chief, see Obj. at 9 n.3, is meaningless. See e.g., Stillians, supra, 843 F.2d at 278-79 (position exempt from ADEA claim under policymaker exception where governor appoints subject to confirmation by elected state senate); Carlton v. City Of Topeka, Kansas, 1993 WL 32780, *2-3 (D.Kan. 1993)(position exempt from Title VII under policymaker exception where mayor appoints with consent of elected council).

**B.     Connecticut General Statutes § 7-302 Is Inapplicable To the Fire District.**

By its plain and unambiguous language, Section 7-302 applies only to a "town, city or borough." "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence, but rather, from the statutory scheme as a whole." Wiseman v. Armstrong, 269 Conn. 802, 820, 850 A.2d 114 (2004) (differentiation of two terms in scheme showed legislature did not intend asserted result); see Conn. Gen. Stat. §§ 1-1 (a); 1-2z. Also in Title 7 of the Connecticut General Statutes, the legislature defined "unit of local government" as "a town or political subdivision thereof," and it defined "political subdivision" as "a city, borough or district within a town." Conn. Gen. Stat. § 7-195. The legislature then set districts apart from the towns in which they exist and defined "district" to include any fire district wholly within a town and having the power to make appropriations or to levy taxes. See Conn. Gen. Stat. § 7-324 (district can also dissolve and consolidate with a town). Furthermore, the legislature also set the Allingtown Fire District apart from other districts via Special Act 39-124, which specifically addresses the Allingtown Fire District's powers and duties. Thus, had the legislature intended to include districts within the scope of section 7-302, it knew how to and could have done so easily using the terms "district," "unit of local government," "political subdivision," or

6

"municipality." See, e.g., Conn. Gen. Stat. §§ 7-301; 7-303; 7-310 (using "town," "city," "borough" and "district" or "fire district" together); 7-233b (9) ("municipality" means "any town, city or borough . . . and any district as defined in section 7-324"); accord Conn. Gen. Stat. §§ 8-39 (r); 12-20a; 12-195b; 36a-800 (4); 42-355 (a) (3). Instead, the statutory scheme and the Special Act indicate districts, and especially the Allingtown Fire District, are distinct entities. Moreover, as Section 7-302 deals only with due process for terminating a fire chief and imposes no appointing requirements, it simply has no bearing.

### C. Hishon Is Inapposite As Consideration For Appointment To The Fire Chief Position Was Not A Term, Condition Or Privilege Of Plaintiff's Employment

Plaintiff relies on Hishon v. King & Spalding, 467 U.S. 69, 104 S. Ct. 2229 (1984), and argues that as a term, condition or privilege of his employment he had a right to be considered for advancement. See Obj. at 10-12. Appropriately, the Seventh Circuit rejected this argument in Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117 (7th Cir. 2001). That Court observed pointedly that "[i]n Hishon . . . the opportunity for an associate to be considered for partnership in a law firm was a 'term, condition, or privilege' of employment because the law firm used the prospect of partnership to induce young lawyers to join the firm, and because associates were terminated if they were not elected to become partners. . . . [T]hus at least being considered for moving up to partner was essential." (Citation omitted.) Id. The Court held Hishon inapplicable where advancement to a position within a certain period of time was not a prerequisite for the employee to keep and succeed in his current post and there was no evidence that such consideration was customary. See id. Similarly here, there is no allegation (nor any evidence) that advancement to the fire chief position within a certain period of time, or at any time, was customary or a prerequisite for Plaintiff to keep and succeed in his current position, or that Plaintiff relied on any such promises, or representations,[4] when he accepted employment with the Fire District or his promotion to

---

[4] The District Rules distinguish high-level appointments from lower-level promotions. See District Rules, Art.2, § 2 (members below rank of Fire Chief and Deputy Chief are in classified service); Art. 1, § 3 (vacancies in classified service filled as far as practicable by promotion from lower classes). Also, the Foreword clause Plaintiff relies upon refers to promotions and is inapplicable to appointments. More

7

Lieutenant. Thus, Hishon is inapposite because, at most, Plaintiff had a mere unilateral hope for advancement.[5]

## III. PLAINTIFF'S EQUAL PROTECTION CLAIM IS INSUFFICIENT.

In an effort to defeat the Defendant's 12(b)(6) motion addressed to the Plaintiff's equal protection claim, the Plaintiff offers a reading of his complaint which challenges even the relaxed standards of notice pleading.[6] A review of the complaint reveals, however, that Plaintiff makes no allegations capable of sustaining his claim. Thus, even if the allegations are viewed as true, no official policy is alleged or shown.

To sustain his claim, Plaintiff must allege and prove a government actor intentionally discriminated against him on the basis of race. See Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999). To hold a municipality liable under section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Although Plaintiff alleges Haley and DeLoatch's actions deprived him of a promotion in violation of his rights, see

---

applicable is the clause providing "[e]ach member of the Department when appointed shall meet all requirements for employment as set forth by the [Board.]" See District Rules, Foreword. Thus, while appointments are granted upon merit and fitness, such determinations are "ascertained as far as practicable by the [Board.]" See id., Art 2, § 2. As such, the rules provide no right to consideration for appointment and make no promise that appointments will or must come from within the department or at any given time. At most, they indicate only how the Board must evaluate potential appointees.

[5]Plaintiff also cites Bishopp v. District of Columbia, 788 F.2d 781 (D.C. Cir. 1986) in support of his argument. See Obj. at 12. In Bishop, the Court did not review whether consideration for advancement was a term, condition or privilege of employment. It did, however, recognize the contingent nature of the ruling in Hishon that Title VII applies *only if* such consideration is a term, condition or privilege of employment. Id. at 789 n.11.

[6]Curiously, Plaintiff also relies solely on cases concerning explicit race-based classifications, which is the not the situation here. The cases cited by the Plaintiff, namely, Adarand, Croson, Wygant, Birmingham, Berkley, Metro Broadcasting, Associated General Contractors, Piscataway, Biondo and Dallas Fire Fighters all concern explicit race-based classifications. See Obj. at 12-13, 15-16. As such, they are simply inapposite. Moreover, Plaintiff fails to note that his first citation to Croson is from two partially concurring opinions, somehow mixed together, and not the majority opinion. See id. The holdings of Washington v. Davis and Piscataway are also misstated. See Obj. at 13, 16.

8

Complaint ¶20; there is no allegation that the alleged actions were the product of a policy or practice of the Fire District or the Board or that such a policy was a substantial factor leading to Plaintiff's alleged injuries.[7] Rather, Plaintiff alleges two individuals (along with several community members) acted outside the parameters of the Board and that one of these was not truly a Board member.[8] See Complaint ¶¶ 13, 16, 20-21; Obj. at 14 ("the said defendants," referring to Haley and DeLoatch, "set about contacting newspaper representatives [to alter] the published job qualifications" and "accomplished this act surreptitiously"). Thus, while Plaintiff has dropped all claims against Haley and DeLoatch, he still relies on their alleged actions in the hopes that a revamped focus upon the Fire District and the Board will raise the unjustified inference of an official policy. Plaintiff has not pleaded, however, and cannot prove a policy or causation, i.e. that Haley or DeLoatch implemented an official policy of the Board or Fire District. See Batista, supra, 702 F.2d at 399.

---

[7] Plaintiff never alleged in his complaint, as he now asserts for the first time, that the District Rules establish a facially neutral selection policy that was applied in a discriminatory manner. See Obj. at 17.

[8] Contradicting his allegation that DeLoatch was not a Board member, Plaintiff now reclassifies Haley and DeLoatch as "two of three Board members" to buttress improperly his claim. See Obj. at 14. Plaintiff also misstates that he alleged he was excluded from consideration *and* promotion when he has only alleged as to this claim that he was deprived of a promotion. See Complaint ¶ 20; Obj. at 15.

9

## IV. CONCLUSION

For the foregoing reasons, in addition those in the Defendants' initial memorandum of law, Defendants' motion to dismiss should be granted.

THE DEFENDANTS

Jennifer L. Schancupp
Federal Bar no: ct 11876
SUSMAN, DUFFY & SEGALOFF, P.C.
55 WHITNEY AVENUE
P.O. BOX 1684
NEW HAVEN, CT 06507
Tel.: (203) 624-9830
Fax: (203) 562-8430

## CERTIFICATION

This certifies a copy of the foregoing was mailed this date, postage prepaid to the following:

Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Paul J. Dorsi, Esq.
Donahue, Votto and DeGennaro PC
415 Main Street
West Haven, CT 06516

Jennifer L. Schancupp

I:\Client A-B\Allingtown Fire District\Massaro P\Pleadings\reply brief draft 041706.wpd