Westlaw.

EEOC Dec. No. 79-8

Page 1

1978 WL 5829 (E.E.O.C.), 26 Fair Empl.Prac.Cas. (BNA) 1760, EEOC Dec. No. 79-8, EEOC Dec. P 6739

**(Cite as: 1978 WL 5829 (E.E.O.C.))**

C

\*1 Decision No. 79-8
October 20, 1978

DECISION

SUMMARY OF CHARGE

Charging Party, a Black female, alleges that Respondents have engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, as amended, by discharging her on the basis of her race and sex.

JURISDICTION

Respondent, employed the requisite number of persons throughout the calendar year of the alleged violation. The charge was filed within the time limitation prescribed by Title VII.

Respondent alleges that the Commission lacks jurisdiction over this charge because the position of Commissioner of the City \*\*\* Department of Administrative Services is exempt under Section 701(f) of the Act as an appointment on the policy-making level and/or as an immediate advisor with respect to the exercise of the constitutional or legal powers of the Office of Mayor of the City \*\*\* [FN1]

Section 701(f) of the Act provides that, "the term 'employee' shall not include any person elected to public office in any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy-making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." (Emphasis added)

The legislative history of the Equal Employment Opportunity Act of 1972, states that the intent of Congress was that the exemptions in Section 701(f) be narrowly construed and not be used to narrow the expanded coverage of the Act which included State and local government employees. [FN2]

In exempting policy-making appointees, Congress realized the necessity of allowing elected officials complete freedom in appointing those who would direct state and local departments and agencies. These individuals must work closely with elected officials and their advisors in developing policies that will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC Dec. No. 79-8

Page 2

1978 WL 5829 (E.E.O.C.), 26 Fair Empl.Prac.Cas. (BNA) 1760, EEOC Dec. No. 79-8, EEOC Dec. P 6739

**(Cite as: 1978 WL 5829 (E.E.O.C.))**

implement the overall goals of the elected officials. In order to achieve these goals, an elected official is likely to prefer individuals with similar political and ideological outlooks. Congress intended to allow elected officials the freedom to appoint those with whom they feel they can work best.

Consistent with the desire to allow elected officials complete freedom in appointing high ranking policy-making officials, is the requirement that the appointee must be personally appointed by the elected official. The legislative history amply documents this requirement. [FN3]

The House-Senate Conference Committee, which developed the final language found in the Act, clearly documents that Congress intended that portion of Section 701(f) which exempts appointees on the policy-making level should exempt only policy-making officials on the highest levels of state or local government. The House-Senate Conference Committee's Section-By-Section Analysis of the Act states specifically:

*2 "This exemption extends to persons chosen by such officials to be on their personal staff, appointees of such officials on the highest policy-making levels such as cabinet members or other immediate advisors of such elected officials with respect to the exercise of the constitutional or legal powers of the office held by such elected officer." [FN4]

The Joint Explanatory Statement of Managers at the Conference in H.R. 1746 to Further Promote Equal Employment Opportunities for American Workers also documents Congress' intent. It states that it is the intention of the Conference to exempt "persons appointed to policy-making positions at the highest levels of the department or agencies of state or local governments, such a cabinet officers and persons with comparable responsibilities at the local level." [FN5]

Both of these analyses specify the type of appointment Congress intended to exempt and give cabinet members as an example of an appointee who would fall within the exemption. "These analyses are particularly relevant as they represent a more detailed explanation of the bill as viewed by the sponsors and legislative leaders." [FN6]

Accordingly, the 701(f) exemption for appointees on the policy-making level applies only where it is established that the individual is not covered by state or local civil service laws, is personally appointed by the elected official, and where the position is a policy-making one at the highest levels of a department or agency of a state or political subdivision of a state.

In the instant case, the evidence indicates that the position of Commissioner of the City of *** Department of Administrative Services falls within the exemption contained in Section 701(f) of the Act. City Commissioners are appointed by the mayor and confirmed by a majority vote of the City Council's total membership. Although the City Council may reject a mayoral nominee, the requirement that an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC Dec. No. 79-8

Page 3

1978 WL 5829 (E.E.O.C.), 26 Fair Empl.Prac.Cas. (BNA) 1760, EEOC Dec. No. 79-8, EEOC Dec. P 6739

**(Cite as: 1978 WL 5829 (E.E.O.C.))**

appointee be personally appointed by an elected official is satisfied. The \*\*\* City Council is an elected eighteen member legislative body. The requirement that the City Council approve the mayor's nominee merely results in more than one elected official making the appointment. This procedure is not proscribed by the language of the Act or by the legislative history.

The evidence of record indicates that the Charging Party was appointed by \*\*\* Mayor \*\*\* and confirmed by the City Council.

The evidence also indicates that the position of Commissioner is a policy-making one on a high level of local government. The Department of Administrative Services is a part of the Executive Branch of City government. The Department consists of four Bureaus: \*\*\*

\*\*\* city ordinances provide that department heads "shall be responsible for the detailed administration and direction of the affairs and operation of the department and the bureaus under his supervision, shall exercise both detailed and general management and control thereof, and shall direct and supervise the detailed operations of the respective Bureau Directors under their jurisdiction." [FN7] To fulfill these responsibilities, the Commissioner, as department head, would necessarily be involved in the development and implementation of policy. The policy-making functions of the Department of Administrative Services include conducting employee labor relations and administering inservice training and other educational programs for employees. [FN8]

CONCLUSION

\*3 Based on the evidence, the Commission holds that the position of Commissioner of the City \*\*\* Department of Administrative Services is within the 701(f) exemptions and the Commission does not have jurisdiction to process this charge.

FN1 Since the Commission holds that the position of Commissioner of the \*\*\* Department of Administrative Services is an appointment on the policy-making level and therefore exempt under Section 701(f) of the Act, we do not address Respondent's contention that Charging Party is an immediate advisor with respect to the exercise of the constitutional or legal powers of the office of Mayor of the City of \*\*\*

FN2 H.R. 1746, P.L. 92-261, 92nd Cong., 2nd Sess. (1971), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972 at 1814, 1844 (1972).

FN3 Both the House-Senate Conference Committee's Section-By-Section Analysis of the Act and the Joint Explanatory Statement Of Managers At The Conference on H.R. 1746 To Further Promote Equal Employment Opportunities For American Workers refers to "appointees of such elected officials." This language indicates that an official would not fall within the exemption if he were not personally appointed by the elected official. Id at Pgs. 1813, 1844.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC Dec. No. 79-8

Page 4

1978 WL 5829 (E.E.O.C.), 26 Fair Empl.Prac.Cas. (BNA) 1760, EEOC Dec. No. 79-8, EEOC Dec. P 6739

**(Cite as: 1978 WL 5829 (E.E.O.C.))**

FN4 Section-By-Section Analysis of H.R. 1746, The Equal Employment Opportunity Act of 1972.

FN5 Joint Explanatory Statement of Managers at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunities For American Workers.

FN6 H.R. 1746, P.L. 92-261, 92nd Cong., 2nd Sess. (1971), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972 at pg. XV (1972).

FN7 ***

FN8 ***

1978 WL 5829 (E.E.O.C.), 26 Fair Empl.Prac.Cas. (BNA) 1760, EEOC Dec. No. 79-8, EEOC Dec. P 6739

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1993 WL 181885 (N.D.Ill.), 62 Empl. Prac. Dec. P 42,490
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents

United States District Court, N.D. Illinois, Eastern Division.
John F. DENEEN, Plaintiff,
v.
CITY OF MARKHAM, Evans R. Miller, Mayor and individually, Roger Agpawa, Fire Chief of Markham Fire Department and individually, Defendants.
**No. 91 C 5399.**

May 26, 1993.

Michael A. Grochowiak, Sklodowski, Franklin, Puchalski & Reimer, Chicago, IL, for plaintiff.
Richard Lee Hutchison, Hutchison & Anders, Tinley Park, IL, for defendants.

MEMORANDUM OPINION AND ORDER

BUCKLO, United States District Judge.
*1 Plaintiff, John F. Deneen ("Mr. Deneen") brought this action against defendants, City of Markham, Markham Mayor Evans R. Miller, and Markham Fire Chief Roger Agpawa (collectively "Markham"), complaining that defendants violated Title VII of the 1964 Civil Rights Act (the "Act"), 42 U.S.C. § 2000e. The parties consented to proceed before a magistrate judge.

*Background*

Mr. Deneen, who is white, alleges that in May and June of 1988, defendants subjected him to a pattern of racial discrimination and harassment which culminated on June 4, 1988 in the denial of his promotion to the rank of fire chief, and on June 8, 1988 in his termination as a deputy fire chief in the Markham Fire Department. Markham now seeks summary judgment on grounds that its fire chief and deputy fire chief positions do not fall within the Title VII statutory definition of an "employee," but fall outside the protective scope of the Act under either the "personal staff" or "policy-making" exemptions of 42 U.S.C. § 2000e(f).

Under Title VII:
The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such an officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f). Markham contends that the deputy fire chief and the fire chief serve as members of the Markham Mayor's personal staff and are also policy-making appointees of the Mayor.

To support its position, Markham submitted a local ordinance which describes the structure of its fire department, and the job descriptions of the fire chief and deputy fire chief. Defendant's Statement of Material Facts ("12(m)"), Exs. A-C. Under the ordinance, the fire chief and deputy chiefs are appointed and terminated by the Mayor. The fire chief is the head of the department, and directly under him are the deputy chiefs. Ordinance No. 87-O-1261, 12(m), Ex. A. According to the ordinance and the job descriptions, the duties of the deputy chief include assisting the chief in the management of the department, and serving as head of the department in the absence of the chief. *Id.*

Mr. Deneen contends that, as deputy chief, his duties did not extend to policy making or " meaningful input into governmental decisions." Plaintiff's Response Pursuant to Local Rule 12(n) (" 12(n)"), Additional Facts, ¶¶ 1, 3. In addition, Mr. Deneen disputes that his duties included the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1993 WL 181885 (N.D.Ill.), 62 Empl. Prac. Dec. P 42,490
**(Cite as: Not Reported in F.Supp.)**

broad list delineated in the local ordinance, but merely included "training, reporting fire incidents, handling the accounting of the part time payroll and responding to fire calls." *Id.*, ¶ 4. Mr. Deneen also claims that he "only carried out the orders of the Chief" and "did not work with or for the Mayor." Affidavit of John F. Deneen, ¶¶ 9-10.

*2 Summary judgment shall be granted if the record demonstrates the absence of any genuine issue of material fact entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant is entitled to summary judgment if the nonmovant fails to establish a genuine issue regarding an element essential to the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a material issue is allegedly in dispute, the entry of summary judgment is only appropriate if the only rational resolution of the dispute would be in favor of the movant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

### Discussion

Title VII does not provide a statutory definition of which employees fall under the personal staff or policy-maker exemption. Courts have looked at the legislative history of Title VII, and concluded that Congress intended the exemptions to be construed narrowly. *See Owens v. Rush*, 654 F.2d 1370, 1375 (10th Cir.1981) (addressing personal staff exception); *Gearhart v. State of Oregon*, 410 F.Supp. 597, 600 (D.Ore.1976) (examining application of policy-maker exemption). The exemptions were originally approved by Congress in 1972, when it extended the Title VII definition of an employer to include local governmental units and agencies. *See* Mack A. Player, Employment Discrimination Law § 5.09 at 208 (1988). Congress recognized that if the term "employee" was left unqualified, every high level public official would be swept into the ambit of the Act. *See Gearhart v. State of Oregon, supra*, 410 F.Supp. at 600. Moreover, Congress also sought to afford elected officials some political freedom from the strictures of the Act in the selection of their intimate staff members and close advisors who are similarly motivated by political considerations. *Id.* A House and Senate conference committee indicated that Congress' objective was to:

exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisers or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons of comparable responsibilities at the local level. It is the conferees intent that this exemption shall be construed narrowly.

2 1972 U.S.C.C.A.N. 2180 (quoted in *Gearhart v. State of Oregon, supra*, 410 F.Supp. at 600).

The determination as to whether a public employee is exempt from the protection of Title VII because he or she serves as either a personal staff member or close advisor to an elected official is a highly factual inquiry based upon the facts and circumstances of the employment relationship between the complaining individual and the elected official. *Owens v. Rush, supra*, 654 F.2d at 1375. Under Title VII, employee status is decided by federal law, and state law is relevant only insofar as it defines the duties and personnel considerations regarding the plaintiff's job. *United States v. Gregory*, 818 F.2d 1114, 1116 (4th Cir.1987).

*3 For purposes of the personal staff exception, the Fifth Circuit summarized six criteria to consider in the course of this "highly factual inquiry:"
(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir.1985); *accord, Nichols v. Hurley*, 921 F.2d 1101, 1110 (10th Cir.1990); *Leving v. City of Chicago*, No. 87 C 1077, 1988 U.S.Dist. LEXIS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Page 3
Not Reported in F.Supp., 1993 WL 181885 (N.D.Ill.), 62 Empl. Prac. Dec. P 42,490
(Cite as: Not Reported in F.Supp.)

1817 at *5 (N.D.Ill.1988); *Paxton v. Bearden,* 783 F.Supp. 1011, 1015 (N.D.Miss.1992).

The exemption for policy making advisors, like the personal staff exception, is narrowly construed and intended to cover only those appointees who "are chosen by the Governor or the mayor or the county supervisor, whatever the elected official is, and who are in a close personal relationship and an immediate relationship with him. Those who are his first line of advisors." 118 Cong.Rec. 4492-93 (1972), quoted by *Anderson v. City of Albuquerque,* 690 F.2d 796, 801 (10th Cir.1982) (holding that staff director for Albuquerque Human Rights Board did not have significant role in formulation of policy and immediate personal relationship with Mayor to warrant exemption under 42 U.S.C. § 2000e(f)).

The facts alleged by the parties demonstrate no genuine dispute regarding Markham's contention that the fire chief lacks employee status under Title VII. Under the *Teneyuca* criteria for the personal staff exemption, the local Markham ordinance demonstrates that the fire chief is not only hired and fired by the Mayor, but is directly accountable to the Mayor. As head of the local Fire Department, the public naturally looks upon the fire chief as the Mayor's representative with respect to fire control and safety. Finally, under local ordinance, the fire chief has considerable control over fire department personnel and its budget. Although Markham has not presented any facts which demonstrate the degree of intimacy between the fire chief and the Mayor, the above considerations are adequate to determine that Markham's fire chief is on the Mayor's personal staff.

In addition, Markham's ordinance and job description of the fire chief position sufficiently establish that the chief falls within the type of high level, sensitive, and policy-making advisory position that Congress intended to exempt from Title VII coverage. *See Anderson v. City of Albuquerque, supra,* 690 F.2d at 801. The Markham fire chief "is responsible directly to the Mayor." Def.'s Memo, Ex. B. Moreover, the fire chief has the power to "make or prescribe such rules and regulations as he shall deem advisable." *Id.,*

Ex. A. The job of a fire department ranks among a municipality's most important duties. A department chief with the plenary powers described above, who is accountable only to the Mayor, is a front-line Mayoral adviser and a formulator of sensitive policy concerns emanating from the Mayor's office. *See Owens v. Rush, supra,* 654 F.2d at 1376 (undersheriff exempt where he had considerable power and was accountable only to elected sheriff); *Ramirez v. San Mateo County District Attorney's Office,* 639 F.2d 509 (9th Cir.1981) (assistant district attorneys exempt because they were exclusively accountable to elected district attorney along with considerable power to represent the elected official before the public); *cf. Bostick v. Rappleyea,* 629 F.Supp. 1328, 1333 (N.D.N.Y.1985) (legislative budget analyst was neither in sensitive position of power, nor directly accountable to state legislators, thereby exemption unwarranted).

*4 Markham, for its part, has not alleged that the fire chief actually performed the duties described in the job description. However, Mr. Deneen has presented no evidence which suggests that the actual duties performed by the fire chief are different than those described by the local ordinance and job description. Thus, the local ordinance and the job description-standing alone and uncontested-are sufficient to establish that no triable issue of fact exists as to whether Markham's fire chief is exempt from Title VII coverage. *See Teneyuca v. Bexar County, supra,* 767 F.2d at 152. (defendant entitled to summary judgment based on uncontested statutory definition of duties).

In contrast, Mr. Deneen has presented sufficient evidence to establish a triable issue of fact over whether the position of deputy chief falls within the exemptions of 42 U.S.C. § 2000e(f). The job description, the local ordinance, and Mr. Deneen's own affidavit all indicate the absence of any significant policy-making role or accountability to the Mayor. This evidence demonstrates that the deputy chief is accountable exclusively to the fire chief, who is not an elected official. *See United States v. City of Montgomery,* 744 F.Supp. 1078 n. 4 (M.D.Ala.1989) (where deputy chiefs of police were accountable only to the chief of police-who

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 4
Not Reported in F.Supp., 1993 WL 181885 (N.D.Ill.), 62 Empl. Prac. Dec. P 42,490
**(Cite as: Not Reported in F.Supp.)**

was not an elected official-no contention advanced by city that deputies were exempt employees). Where an appointee such as Markham's deputy fire chief is accountable to someone other than the appointing elected official, that appointee does not serve at the exclusive pleasure of the elected official. *Nichols v. Hurley, supra,* 921 F.2d at 1113 Moreover, Markham has presented no evidence which suggests that Mr. Deneen, as deputy fire chief, was on the Mayor's personal staff in a "highly intimate and sensitive" working relationship with the Mayor. *See, e.g., Curl v. Reavis,* 740 F.2d 1323, 1328 (4th Cir.1984) (deputy sheriff to elected sheriff was neither high-level advisor nor intimate member of Mayor's staff to warrant exemption).

Markham's sole argument for application of the exemption to the deputy chief position is based on a provision in the Markham local ordinance which states that the deputy fire chief serves as head of the department in the absence of the fire chief. Defendants' Reply, ¶¶ 3, 7-10. Markham cites no authority to support its contention that an employee is exempt from Title VII where only a possibility exists that the employee will perform duties within the scope of the personal staff or policy-making exemptions. Case authority does suggest that where a high-level appointee fills in for an absent elected official, that responsibility is probative of the appointee's status as a close and intimate advisor of the elected official. *See, e.g., Owens v. Rush, supra,* 654 F.2d at 1376-77 (fact that undersheriff was in charge of department in absence of elected sheriff underscored close relationship); *Starrett v. Wadley,* 876 F.2d 808, 820-22 (10th Cir.1989) (elected county assessor appointed first or chief deputy to act in his absence, but exemption denied because that person was not plaintiff). However, no authority holds that the possibility of filling in for an absent advisor or policy-maker-as opposed to filling in for the elected official-is sufficient to warrant exempt status.

*5 In any event, Markham does not allege that Mr. Deneen ever headed up the department because of the chief's absence. Where the defendant provides no evidence that the duties of the proposed exempt position ever included a policy-making or advisory function regarding the constitutional or legal powers of the elected official, the exemption of Section 2000e(f) is inapplicable. *See Bishopp v. District of Columbia,* No. 83-0147, 35 FEP 1889 (D.D.C.1989) (positions of Assistant fire chief and deputy fire chief, despite being appointed by Mayor, were not high level advisors or members of Mayor's personal staff to warrant exemption from Title VII coverage).

*Conclusion*

I conclude that under 42 U.S.C. § 2000e(f), Markham's position of fire chief is exempt from Title VII coverage while the position of deputy fire chief is not exempt. Therefore, Markham's motion for summary judgment is granted with respect to Mr. Deneen's claim that he was unlawfully denied a promotion to the position of fire chief. However, Markham's motion is denied with respect to Mr. Deneen's claim that he suffered from racial harassment and discrimination culminating in his discharge from the position of deputy fire chief on June 8, 1988.

FN1. The Markham Fire Department was also a named defendant in Mr. Deneen's Complaint, but was dismissed by agreement.

FN2. Count I of Mr. Deneen's complaint originally also sought relief under 42 U.S.C. § 1983, but this count was voluntarily dismissed.

FN3. In his 12(n) Statement, Mr. Deneen questioned whether the local ordinance was in effect during his tenure with the Markham Fire Department. However, Markham submitted a copy of the ordinance with an attached copy of the attestation by the city clerk, which shows that the ordinance was passed by the Markham city council and approved by Mayor Miller on February 4, 1987. 12(m). Ex. 2.

N.D.Ill.,1993.
Deneen v. City of Markham
Not Reported in F.Supp., 1993 WL 181885

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 5

Not Reported in F.Supp., 1993 WL 181885 (N.D.Ill.), 62 Empl. Prac. Dec. P 42,490
**(Cite as: Not Reported in F.Supp.)**

(N.D.Ill.), 62 Empl. Prac. Dec. P 42,490

Briefs and Other Related Documents (Back to top)

• 1:91CV05399 (Docket) (Aug. 26, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 1

Not Reported in F.Supp., 1993 WL 32780 (D.Kan.), 61 Fair Empl.Prac.Cas. (BNA) 89
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, D. Kansas.
Melinda CARLTON, Plaintiff,
v.
CITY OF TOPEKA, KANSAS, a Municipality,
Defendant.
**Civ. A. No. 91-2273-JWL.**

Jan. 21, 1993.

Veronica Johnson, Arthur A. Benson, II, Benson & McKay, Kansas City, MO, for plaintiff.
Catherine A. Walter, Thomas E. Wright, Davis, Wright, Unrein, Hummer & McCallister, H. Neil Roach, Office of the City Atty., Topeka, KS, for defendant.

MEMORANDUM AND ORDER
LUNGSTRUM, District Judge.
*1 This matter comes before the court on defendant City of Topeka's motion for summary judgment (Doc. # 70) and motion to strike (Doc. # 75). For the reasons set forth below, the motion for summary judgment is granted and the motion to strike is denied as moot.

*I. Facts*

The following facts are uncontroverted for purposes of the motion for summary judgment. Melinda Carlton was employed by the City of Topeka for about one and one-half years. She was hired originally on May 16, 1988 as an Assistant to the Chief Administrative Officer ("CAO"). On April 14, 1989, Mayor Harry L. Felker appointed her to the position of acting CAO and she began reporting directly to the mayor. Because the CAO is hired by the mayor with the consent of the city council, Mayor Felker submitted her name to the city council for confirmation as permanent CAO, but they refused to confirm her. Ms. Carlton resigned from her employment with the City of Topeka on December 1, 1989.

Both the Mayor and the City Council members of Topeka are elected officials. The CAO of Topeka has a variety of policy-making duties, including 1) developing a city operating and capital improvement budget, 2) developing city goals, policies, and procedures, 3) strategic planning, 4) and reviewing and approving major expenditures. The position of CAO is not subject to civil service laws.

Ms. Carlton brought this action in July, 1991 under Title VII, 42 U.S.C. § 2000e *et seq.*, alleging sex discrimination and under state law alleging breach of an oral contract to pay her compensation for overtime work. She alleged that a city council member told her and the local news media that the reason she was not confirmed for CAO was that there were too many women running city hall. She also alleges the mayor and a city official promised her compensation for her overtime work.

*II. Discussion*

For the reasons set forth below, the court finds that Ms. Carlton does not meet the definition of " employee" in Title VII and therefore may not seek relief pursuant to that statutory scheme. In order to prove that the defendant unlawfully discriminated against her in violation of Title VII, the plaintiff must show, inter alia, that she was an "employee" within the meaning of 42 U.S.C. § 2000e(f). *See Owens v. Rush,* 654 F.2d 1370, 1374 (10th Cir.1981). Where a plaintiff alleges a discriminatory failure to hire, as here, the position sought by the plaintiff must be one of "employee" status. *Stillians v. State of Iowa,* 843 F.2d 276, 278-79 (8th Cir.1988). Title VII defines an employee as

an individual employed by an employer, except that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1993 WL 32780 (D.Kan.), 61 Fair Empl.Prac.Cas. (BNA) 89
**(Cite as: Not Reported in F.Supp.)**

the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, ... or *an appointee on the policy making level*.... The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a ... political subdivision."

*2 42 U.S.C. § 2000e(f) (emphasis added). Courts look to the nature of the employment relationship between the complaining individual and the elected official to determine whether the exception applies. *Owens v. Rush*, 654 F.2d 1370, 1375 (10th Cir.1981).

According to this statute, to fit the policy making exception to the definition of employee, a person must 1) be appointed by an elected official, 2) make policy, and 3) not be subject to civil service laws. The plaintiff does not contest the fact that the CAO makes policy and it is clear from Topeka's city ordinances that the CAO does hold a policy making position. It is also uncontroverted for the purposes of this motion that the CAO is not subject to civil service laws.

The issue is whether the CAO position is appointed by an elected official. The material facts are not in dispute. The plaintiff simply argues that a CAO is not appointed by an elected official because the mayor may only appoint the CAO with the confirmation of the city council. The court rejects that argument and holds that for the purposes of the definition of "employee" in Title VII, the CAO of the City of Topeka is appointed by elected officials.

When Ms. Carlton was considered for the position of CAO, the position was advertised and applications were open to the public. Applicants' resumes were screened by Robert Bugg, personnel director for the city, but the mayor decided the person to be appointed. The mayor submitted the name of his selected candidate to the city council for their approval by a majority vote. In this case, the city council chose not to confirm Ms. Carlton, and it is that action which led to this lawsuit. One problem with the plaintiff's argument that the confirmation requirement defeats the "appointee" prong of the policy making exception is that the mayor and the city council members *are* all elected officials and even if the appointment is deemed to require joint action by the mayor and the city council, it still remains squarely in the hands of people elected by the voters.

The EEOC decided a question very similar to this one in EEOC Dec.P. 6739, Dec. No. 79-8 (1978). They decided that the charging party was not an employee because she was an appointed policy maker. The charging party was the Commissioner of the City Department of Administration (a position apparently analogous to Topeka's CAO). The EEOC made the following statement concerning the Commissioner's appointment:
In the instant case, the evidence indicates that the position of Commissioner of the City Department of Administrative Services falls within the exemption contained in Section 701(f) of the Act. City Commissioners are appointed by the mayor and confirmed by a majority vote of the City Council's total membership. Although the City Council may reject a mayoral nominee, the requirement that an appointee be personally appointed by an elected official is satisfied. The City Council is an elected eighteen member legislative body. The requirement that the City Council approve the mayor's nominee merely results in more than one elected official making the appointment. This procedure is not proscribed by the language of the Act or by the legislative history.

*3 *Id.*

The legislative history indicates that this exception applies only to policy making officials such as cabinet members who are on the highest levels of state and local government. Joint Explanatory Statement of Managers at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunities for American Workers, reprinted in *Legislative History of Equal Employment Opportunity Act of 1972*. The Topeka CAO, like federal cabinet positions, is appointed by the executive branch and confirmed by a legislative body. This court finds the situation directly analogous and the EEOC's reasoning persuasive. Therefore, it finds that the CAO is a policy making appointee of elected officials, which satisfies the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1993 WL 32780 (D.Kan.), 61 Fair Empl.Prac.Cas. (BNA) 89
**(Cite as: Not Reported in F.Supp.)**

policy making exception to the Title VII definition of an employee found in 42 U.S.C. 2000e(f). As such, Ms. Carlton was not an "employee" and not entitled to the protection of Title VII when she sought the CAO position. *See Owens,* 654 F.2d at 1374.

Because this court has dismissed the plaintiff's Title VII claim, the plaintiff's only remaining claims are two state law contract claims for uncompensated overtime pursuant to alleged oral contracts. The court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 because "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The plaintiff has not alleged diversity jurisdiction. This appears to be a dispute between a Kansas person and a Kansas municipality and this court declines to exercise supplemental jurisdiction over these state law contract claims (Counts 2 and 3 in the amended complaint) and, therefore, it dismisses this matter in its entirety.

### *III. Conclusion*

**IT IS THEREFORE ORDERED BY THE COURT** that defendant City of Topeka's motion for summary judgment (Doc. # 70) is granted as to plaintiff's Title VII claim (Count I).

**IT IS FURTHER ORDERED BY THE COURT** that plaintiff's state law contract claims (Counts II and III) are dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that all of plaintiff's claims have been adjudged or dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that defendant City of Topeka's motion to strike (Doc. # 75) is denied as moot.

> FN1. These motions were originally scheduled for hearing on January 11, 1992, primarily because the case was recently transferred to this court. Due to a failure in communication, apparently, neither party appeared for the hearing. After thoroughly reviewing the briefs, the court has determined that a hearing would not materially aid in the determination of the matter. Therefore, a hearing was not rescheduled.

D.Kan.,1993.
Carlton v. City of Topeka, Kan.
Not Reported in F.Supp., 1993 WL 32780 (D.Kan.), 61 Fair Empl.Prac.Cas. (BNA) 89

Briefs and Other Related Documents (Back to top)

• 2:91cv02273 (Docket) (Jul. 24, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.